**UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

---

NO. 25-2762

---

GREGORY HARTMANN; JOHN HAYS; DEWAYNE BAILEY; ISHAQ BRYANT; HOWARD CHAPMAN; CHRISTO BELONY; And ROBERT EDWARDS, on behalf of themselves and all others similarly situated,

*Appellants*

v.

HON. BRIAN CHUDZIK; HON. EDWIN TOBIN; HON MILES BIXLER; HON. ANDREW LEFEVER, in their official capacities as Magisterial District Judges; LANCASTER COUNTY; WARDEN OF THE LANCASTER COUNTY PRISON,

*Appellees*

---

# Appellees Hon. Brian Chudzik, Hon. Edwin Tobin, Hon Miles Bixler, and Hon. Andrew Lefever's Petition for Rehearing *En Banc*

---

On Appeal from the United States District Court for the Eastern District of Pennsylvania, D.C. Civ. A. No. 5:22-cv-1588

---


**MEGAN MALLEK, ESQUIRE**
**MICHAEL DALEY, ESQUIRE**
Attorney I.D. No. PA321341
Administrative Office of PA Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102
(215) 560-6326
legaldepartment@pacourts.us

## Table of Contents


Table of Contents ............ i

Table of Citations ............ ii

Rule 35.1 Statement ............ 1

Introduction ............ 2

Reasons for Granting the Petition ............ 5

I. The Majority's decision is in direct conflict with the Supreme Court's holding in *O'Shea v. Littleton* and other circuits because it allows a district court to act as a federal auditor of state court criminal proceedings ............ 5

A. The Majority's decision conflicts with *O'Shea v. Littleton*, which is factually indistinguishable from the case at bar and mandates abstention ............ 5

B. The Majority's decision conflicts with other circuits' decisions abstaining from similar challenges to judicial bail-setting ............ 9

C. The Majority relied on distinguishable cases in reaching its holding ............ 12

II. This case presents a matter of exceptional importance because it sanctions federal court interference in state criminal proceedings and judicial determinations ............ 16

Conclusion........................................................................................ 20

Certification of Compliance and Length

Exhibit A (Panel Decision)

Certificate of Service

# Table of Authorities

## Cases

*Anthony v. Council*,
316 F.3d 412 (3d Cir. 2003)....7

*Conover v. Montemuro*,
477 F.2d 1073 (3d Cir. 1972)....12-14

*Daves v. Dallas Co.*,
64 F.4th 616 (5th Cir. 2023)....1, 10-11, 19

*Disability Rights N.Y. v. New York*,
916 F.3d 129 (2d Cir. 2019)....11

*Gerstein v. Pugh*,
420 U.S. 103 (1975)....12, 14, 19

*Goetz v. Crosson*,
41 F.3d 800 (2d Cir. 1994)....17

*Grant v. Shalala*,
989 F.2d 1332 (3d Cir. 1993)....17

*In the Matter of Rufus Cook*,
49 F.3d 263 (7th Cir. 1995)....17

*Kaufman v. Kaye*,
466 F.3d 83 (2d Cir. 2006)....1, 11

*Lui v. Commission, Adult Enter., De*,
369 F.3d 319 (3d. Cir. 2004)....2

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n*,
457 U.S. 423 (1982)....7

*New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*,
491 U.S. 350 (1989)....3

*O'Shea v. Littleton*,
414 U.S. 488 (1974)....1, 3-9

*Rizzo v. Goode*,
423 U.S. 362 (1976) .......................................................................... 2

*Sprint Commc'ns, Inc. v. Jacobs*,
571 U.S. 69 (2013) ......................................................................3, 6-7

*Stewart v. Abraham*,
275 F.3d 220 (3d Cir. 2001)..............................................................12-13

*United States v. Crouch*,
566 F.2d 1311 (5th Cir. 1978) .............................................................. 17

*United States v. Morgan*,
313 U.S. 409 (1941) .......................................................................... 17

*Wallace v. Kern*,
520 F.2d 400 (2d Cir. 1975)................................................................. 11

*Younger v. Harris*,
401 U.S. 37 (1971) ......................................................................... 1, 3

## Rule

Pennsylvania Rule of Criminal Procedure 523 .............................2, 15-16

## RULE 35.1 STATEMENT

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to decisions of the United States Court of Appeals for the Third Circuit or the Supreme Court of the United States, and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court, i.e., the panel's decision is contrary to the decisions of the Supreme Court in *O'Shea v. Littleton*, 414 U.S. 488 (1974), and *Younger v. Harris*, 401 U.S. 37 (1971).

The panel decision also conflicts with *Daves v. Dallas Co.*, 64 F.4th 616 (5th Cir. 2023) (*en banc*), *cert. denied*, 144 S. Ct. 548 (2024), and *Kaufman v. Kaye*, 466 F.3d 83 (2d Cir. 2006).

Further, this appeal raises a question of exceptional importance concerning federal interference in Pennsylvania state criminal proceedings and principles of federalism and comity.

## INTRODUCTION

"[T]he concerns of comity and federalism which underlie the *Younger* doctrine command the federal courts to respect the independence and functioning of the state courts." *Lui v. Commission, Adult Enter., De*, 369 F.3d 319, 326 (3d. Cir. 2004) (citing *Rizzo v. Goode*, 423 U.S. 362, 380 (1976)).

Despite this fundamental principle, the panel Majority's Opinion requires a federal court to disregard that principle and audit state courts and the judicial decisions rendered in state court bail hearings. It authorizes district courts to look over the shoulder of state court judges to ensure they exercise their judicial discretion as the federal court sees fit. And it allows criminal defendants to bypass state court review and go to federal court, creating a dual-track bail-setting system.

Appellants are or were criminal defendants in Lancaster County, Pennsylvania who appeared before Appellees, four Magisterial District Judges ("MDJs"), for preliminary arraignments at which their bail was set. Appellants filed suit alleging that the MDJs failed to fully consider all the factors set forth in Pennsylvania Rule of Criminal Procedure 523

when setting bail, and particularly those bearing on their indigency, which they claim amounted to an unconstitutional policy or practice.

The issue here is not whether the MDJs are bound by Pennsylvania's Rules of Criminal Procedure. Instead, it is whether the MDJs' judicial bail determinations that allegedly fail to comport with those state rules can form the basis of a federal claim over which the federal courts can exercise jurisdiction and review and audit the MDJs' judicial decisions.

The District Court recognized that such claims cannot be maintained because any relief it could order would amount to an impermissible federal audit of state court criminal proceedings. Thus, it declined to exercise jurisdiction pursuant to the well-settled principles of federalism and comity underlying the Supreme Court's holdings in both *Younger v. Harris,* 401 U.S. 37 (1971), and *O'Shea v. Littleton,* 414 U.S. 488 (1974).[1]

---

[1] Under the abstention doctrine originally set forth in *Younger*, a federal court must decline to exercise jurisdiction where a plaintiff seeks relief that would enjoin or substantially interfere with certain state proceedings, the first category of which are state criminal prosecutions. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013) (citing *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 367-68 (1989)). In addition, abstention applies when the requested

The panel Majority disagreed. Through an improperly narrow reading of the Supreme Court's abstention decisions and misinterpreting this Court's case law, the Majority found that Pennsylvania's preliminary arraignments do not fall within the category of cases to which *Younger* abstention applies and, therefore, the federal courts have *carte blanche* to oversee those arraignments and judicial decisions.

As the Dissent notes, the Majority's ruling is in direct conflict with Supreme Court case law. It would permit criminal defendants to circumvent the bail review procedures available in state court and instead challenge those bail determinations in federal court. This is the mischief that *Younger* and *O'Shea* sought to prevent, as it would upend Pennsylvania courts' authority over the adjudication of the Commonwealth's criminal cases.

---

relief results in "nothing less than an ongoing federal audit of state criminal proceedings which would indirectly accomplish the kind of interference that *Younger* . . . and related cases sought to prevent." *O'Shea*, 414 U.S. at 500.

The Majority's decision misinterprets the Supreme Court's holdings, applies factually distinguishable cases from this Court, and is conflict with other circuit courts. Thus, rehearing *en banc* is necessary.

## REASONS FOR GRANTING THE PETITION

### I. The Majority's decision is in direct conflict with the Supreme Court's holding in *O'Shea v. Littleton* and other circuits because it allows a district court to act as a federal auditor of state court criminal proceedings.

#### A. The Majority's decision conflicts with *O'Shea v. Littleton*, which is factually indistinguishable from the case at bar and mandates abstention.

The case at bar is on all fours with *O'Shea*. There, the plaintiffs sought injunctive relief against judicial officers alleging a variety of constitutional violations throughout their criminal proceedings, including "set[ting] bond in criminal cases according to an unofficial bond schedule without regard to the facts of a case or circumstances of an individual defendant." *O'Shea*, 414 U.S. at 492. In other words, they raised the exact claims Appellants raise here, which the Supreme Court rejected based on federalism and comity.

Thus, even though the *O'Shea* plaintiffs did not seek to enjoin their criminal prosecutions on the merits *per se* – as Appellants point

out they also do not – the Supreme Court held that the requested injunction would amount to "nothing less than an ongoing federal audit of state criminal proceedings which would indirectly accomplish the kind of interference that *Younger* . . . and related cases sought to prevent." *Id.* at 500.

The *O'Shea* decision is on point with the case at bar. Appellants raise the same claims as the *O'Shea* plaintiffs did: claims that judicial officers set bail without a proper inquiry into ability to pay. As such, success on their claims necessitates the type of federal audit that the Supreme Court has held is not allowed. *See O'Shea,* 414 U.S. at 493 (federal courts may not "supervise and regulate by mandatory injunction the discretion which state court judges may exercise within the limits of the powers vested in them by law.")

Yet the Majority, in an impermissibly narrow interpretation of abstention case law, held that *O'Shea* did not apply here because Appellants' claims did not fall into any of the three categories outlined in the Supreme Court's decision in *Sprint Commc'ns, Inc. v. Jacobs* 571 U.S. 69 (2013) – specifically that the claims did not interfere with state criminal prosecutions.

The Majority held that Appellants were not seeking to enjoin their state criminal prosecutions under *Sprint* because their bail determinations were "ancillary to the merits" of those prosecutions and "d[id] not involve defenses to their alleged crimes." (Maj. Op at 12.)[2] Thus, the Majority concluded that abstention did not apply.

But the intrusion that triggers abstention does not mean enjoining only the prosecution itself. Instead, *Younger* abstention applies when the equitable relief results in "unwarranted anticipatory interference in the state criminal process by means of continuous or piecemeal interruptions of the state proceedings by litigation in federal court." *O'Shea*, 414 U.S. at 500. This is just what the Majority's decision will allow a federal court to do.

---

[2] If a case falls within one of the categories set forth in *Sprint*, a federal court must abstain where: (1) an on-going state court proceeding exists; (2) the state proceeding implicates important state interests; and (3) the state proceeding affords an adequate opportunity to raise federal claims. *Anthony v. Council*, 316 F.3d 412, 418 (3d Cir. 2003); *see Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982). Because the Majority held that Appellants' claims did not fall within one of the categories to which *Younger* applies under *Sprint*, it did not reach these *Middlesex* factors, and a discussion here is unnecessary. (Maj. Op. at 16 n 12.) However, as explained in MDJs' Principal Brief, all *Middlesex* factors have also been met.

The Majority attempted to distinguish *O'Shea* based on the scope of relief sought, reasoning that because the *O'Shea* plaintiffs sought to enjoin a whole host of statewide procedures (setting bond, imposing criminal sentences, collecting fees), its holding somehow does not apply to Appellants' narrower request to enjoin only bail determinations. (Maj. Op. at 13-15.)

This position is unsupportable, as the Dissent aptly noted:

> The Majority Opinion's only answer to *O'Shea* is a form of judo; it attempts to use the strength of *O'Shea* against itself. According to the Majority Opinion, the reason for abstention in *O'Shea* was that the claims there extended beyond bond hearings to include "nearly every stage of [the] state criminal proceedings." But abstention in *O'Shea* was not based on the cumulative weight of the challenges, and therefore its *Younger* abstention holding applied to every claim individually. So judo does not work here.

(Dissent at 1-2) (cleaned up).

Indeed, *O'Shea* made no distinction between plaintiffs' bail-related claims and those related to proceedings on the merits of the criminal charges, and its holding applied to a far broader scope of state criminal proceedings than the Majority's Opinion would suggest. *See O'Shea*, 414 U.S. at 500 ("Respondents do not

seek to strike down a single state statute, either on its face or as applied; nor do they seek to enjoin any criminal prosecutions that might be brought under a challenged criminal law. . . . What they seek is an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials.")

The Majority overlooked this vital point. As in *O'Shea*, Appellants seek to have a federal court control how bail determinations are made in state criminal trials and audit state court proceedings. This is what the Supreme Court holds cannot be done: *Younger*'s principles of "equity, comity, and federalism" also require abstention from cases seeking declaratory or injunctive relief when that relief opens the door to a "federal audit of state criminal proceedings." *Id.* at 500.

### B. The Majority's decision conflicts with other circuits' decisions abstaining from similar challenges to judicial bail-setting.

Not only does the Majority's decision conflict with Supreme Court law, but with other circuits, too. The *en banc* Fifth Circuit, when faced with a similar fact pattern, held that such an

intrusion into state court functions was unwarranted. In *Daves v. Dallas County*, the plaintiffs alleged they were unconstitutionally incarcerated pre-trial based on their inability to post bail, because bail had been set pursuant to an offense-based schedule – which is not present here – promulgated by the district and county court at law judges. 64 F.4th 616, 621 (5th Cir. 2023) (*en banc*), *cert. denied*, 144 S. Ct. 548 (2024). The plaintiffs sought "a variety of alterations to the pretrial decisional process, including but not limited to obtaining detailed financial assessments from each arrestee, strict time limits for decision-making, and the possibility of immediate appeal." *Id*. at 621-22.

Relying on *Younger* and *O'Shea*, the Fifth Circuit stated, "We hold that a string of consistent Supreme Court authority commencing with *Younger v. Harris* requires federal courts to abstain from revising state bail bond procedures on behalf of those being criminally prosecuted, when state procedures allow the

accused adequate opportunities to raise their federal claims." *Id.* at 620.[3]

The Fifth Circuit is not alone; the Second Circuit also holds that claims targeting the adjudication of bail in criminal matters runs afoul of the abstention principles underlying *Younger* and *O'Shea*. *See Kaufman v. Kaye*, 466 F.3d 83 (2d Cir. 2006) (collecting cases) (abstaining from case seeking imposition of new practice for assigning appeals in New York State courts where "any remedy fashioned by the state would then be subject to future challenges in the district court."), *cert. denied*, 549 U.S. 1280 (2007); *Wallace v. Kern*, 520 F.2d 400, 408-09 (2d Cir. 1975) (abstaining from case seeking the imposition of new bail procedures in New York State courts), *cert. denied*, 424 U.S. 912 (1976); *see also Disability Rights N.Y. v. New York*, 916 F.3d 129, 136-37 (2d Cir. 2019) (abstaining from case asking state courts to adopt certain procedures in guardianship cases).

---

[3] Here, the Majority declined to rely on *Daves* because the Fifth Circuit "disagree[d] with some or all of the reasoning in" this Court's *Stewart* decision. (Maj. Op. at 13 n.9.) But that is incorrect. Instead, the Fifth Circuit did not follow *Stewart* because it was "factually far afield" from the case before it. *Daves*, 64 F.4th at 632. Just like the case at bar.

### C. The Majority relied on distinguishable cases in reaching its holding.

Instead of relying on the Supreme Court's holdings on point, the Majority believed it was bound by this Court's distinguishable decisions in *Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001), *cert. denied*, 536 U.S. 958 (2002), and *Conover v. Montemuro*, 477 F.2d 1073 (3d Cir. 1972), as well as a footnote in *Gerstein v. Pugh*, 420 U.S. 103 (1975). But these cases did not involve claims against judicial officers related to judicial determinations or require a federal audit. Thus, they are inapposite.

In *Stewart*, the Court addressed the Philadelphia District Attorney's "re-arrest policy," wherein criminal defendants could be re-arrested on dismissed charges without a finding of probable cause. The issue was whether a federal court could mandate that plaintiffs receive a probable cause determination prior to re-arrest.

The relief sought in *Stewart* did not require a federal court to monitor state court operations. Considering *Younger*'s requirements against this backdrop, the Court decided that "the equitable relief requested [was] not aimed at state prosecutions,

but at the legality of the re-arrest policy and the pretrial detention of a class of criminal defendants." *Stewart*, 275 F.3d at 225.

The differences between this case and *Stewart* are clear. The claims in *Stewart* were directed at the district attorney, not court entities or judges. Further, no threat that a federal court would audit state court proceedings and review judicial determinations existed. And there was nothing "case-dependent" that would require a federal court to engage in ongoing monitoring of the state court's actions. Unlike the instant case.

Similarly, in *Conover* the issue was whether juvenile offenders were entitled to a prima facie determination of delinquency by a judicial officer prior to their pretrial detention. Like in *Stewart*, the requested relief did not require continuing federal oversight of the state's operations and judicial decisions. In fact, the decision was premised on the federal court's ability to fashion relief that avoided interference in the state's judicial decisions: "Since a remedy with respect to the intake procedures would *not necessarily interfere with the adjudication functions of the Commonwealth's juvenile court*, it is therefore not necessarily

precluded by *Younger*[.]" *Conover*, 477 F.2d at 1082 (emphasis added).

In *Gerstein*, the question before the Supreme Court was "whether a person arrested and held for trial under a prosecutor's information is constitutionally entitled to a judicial determination of probable cause for pretrial restraint of liberty." 420 U.S. at 105. In other words, whether a judicial hearing should occur – not an examination of the decision-making process. Abstention under *Younger* was not necessary because the injunction was aimed at the "legality of pretrial detention without a judicial hearing." *Id.* at 108 n. 9.

Thus, the ruling for the *Gerstein* plaintiffs did not require ongoing oversight of state court functions and interference with judicial decisions; indeed, the Court disclaimed an intention to interfere beyond defining the contours of the plaintiffs' constitutional rights. *See id.* at 123 ("While we limit our holding to the precise requirement of the Fourth Amendment, we recognize the desirability of flexibility and experimentation by the States.")

The difference between the case at bar and *Stewart*, *Conover*, and *Gerstein* is apparent: those cases did not require a federal court to engage in interference with judicial decision-making as Appellants seek here or require a federal audit. Each of these cases dealt with the failure to provide a hearing in the first instance.

Nonetheless, the Majority sought to algin this case with *Stewart* and *Conover*: "Plaintiffs' relief asks the District Court to answer the 'yes or no question' of whether MDJs must consider the factors in Pennsylvania Rule of Criminal Procedure 523 to make initial bail determinations and does not seek federal oversight of preliminary arraignments to ensure that they are conducted in a subjectively acceptable way." (Maj. Op. at 15 n. 10.)

But the parties already agree that the MDJs must consider the factors set forth in Rule 523. Instead, the question Appellants raise that the Majority missed is whether the MDJs are *properly exercising their judicial authority* under the criminal procedure rules. In other words: are the MDJs giving enough weight to the ability to pay question?

To ensure that the MDJs consider all factors in the state rules that the federal court deems constitutionally necessary and whether they are giving "proper" weight to the ability to pay, it would have to pull back the curtain on the MDJs thought processes to continually monitor and second-guess the MDJs' individual judicial determinations.

Appellants' claims – raised against judicial officers regarding the propriety of their judicial decisions – take this case outside the realm of the blanket, non-judicial policies set forth in *Gerstein, Stewart* and *Conover* and places it directly within *O'Shea*'s holding requiring abstention.

## II. This case presents a matter of exceptional importance because it sanctions federal court interference in state criminal proceedings and judicial determinations.

The extent of the invasion into state court functions necessitated by the Majority's holding cannot be overstated. As the Dissent aptly states:

> Without *Younger* abstention, a criminal defendant's constitutional claim of inadequate consideration of any of [Pa. R. Crim. P. 523's] factors would trigger federal-court review. Apart from the potential volume of challenges that await, that litigation would be inherently

> burdensome – a criminal defendant would testify against the Magisterial District Judge who set his bail, and to avoid a finding of noncompliance with the injunction, the Magisterial District Judge would likely provide testimony as well. The accused would become the accuser, and the neutral would become the accused. That is much worse than the mere fear of a federal audit that prompted abstention in *O'Shea*. *Here, the federal-court intervention would be nothing short of the upending and subsequent micromanagement of a state-court criminal proceeding.*

(Dissent at 3) (emphasis added). Thus, for an MDJ to defend against a claimed violation of a federal court order their deliberative, judicial decision process would be open for examination, a function that is privileged.[4]

And not just in one case: every defendant who is arraigned would be able to challenge their bail in federal court. So not only will an MDJ be required to preside over criminal and other matters, but they will also be required to defend their decisions in federal court. What is more,

---

[4] *See United States v. Morgan*, 313 U.S. 409, 422 (1941); *Grant v. Shalala*, 989 F.2d 1332, 1344 (3d Cir. 1993); *Goetz v. Crosson*, 41 F.3d 800, 805 (2d Cir. 1994), *cert. denied*, 516 U.S. 821 (1995); *United States v. Crouch*, 566 F.2d 1311, 1316 (5th Cir. 1978); *In the Matter of Rufus Cook*, 49 F.3d 263, 265 (7th Cir. 1995).

a criminal defendant could forum shop where they get their bail reviewed: state or federal court, or both.

A federal court cannot grant relief that would not lead to these outcomes. Certainly not the relief requested in Appellants' Amended Complaint, wherein they ask the district court to permanently enjoin the Warden from "executing orders by the Defendant MDJs to detain individuals on cash bail unless the MDJs comply with the requirements of the Fourteenth Amendment and engage in a constitutionally adequate inquiry into all factors essential to a lawful bail determination, including ability to pay." (JA197.)[5]

On appeal, Appellants pivoted to relief they believe would avoid abstention: federally-mandated financial condition forms, requirement of contemporaneous recorded or written statement of reasons for bail determinations, and prohibitions on imposition of monetary bail until counsel has been appointed. (Appellants' Reply Brief, Doc. 64, at 10.) But this still requires federal oversight and control over state court

---

[5] It is unclear how the warden is supposed to know this. Would they be required to call the judge for every order to ask if they took enough time and asked enough questions? The unworkability of Appellants' relief is plain.

proceedings. Such interference with a state court's authority to adjudicate criminal matter cannot stand, especially given the Supreme Court's clear mandate against federal intrusion on a states "flexibility and experimentation" in criminal matters. *See Gerstein*, 420 U.S. at 123.

Appellants' position would also not solve the issue of dissatisfied criminal defendants running to federal court each time they believed an MDJ made an error in their decision-making that violated the federal court's decree.

No matter how Appellants attempt to fashion their relief, there is no way to avoid the inevitable conclusion that a finding in Appellants' favor would require a federal court to audit state court bail determinations. As the *Daves* court recognized, granting such relief would allow a state criminal defendant go to federal court over claimed violations of its order instead of utilizing available state remedies, thus usurping the state court's sovereignty and authority over its criminal cases. *See Daves*, 64 F.4th at 630-31.

Such an outcome is precisely the type of intrusion that the Supreme Court in *Younger* and *O'Shea* held was not allowed, and why the Majority's decision is incorrect and *en banc* rehearing is necessary.

## CONCLUSION

This Court should grant *en banc* review of the panel's decision on these important issues of federalism and comity.

Respectfully submitted,

***S/Megan Mallek***
**MEGAN MALLEK, ESQUIRE**
**MICHAEL DALEY, ESQUIRE**
Administrative Office of PA Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102
legaldepartment@pacourts.us
(215) 560-6326, Fax: (215) 560-5486

***Counsel for MDJ Appellees***

## Certification of Compliance

1. The undersigned counsel certifies that she is a member in good standing of the Bar of this Court.

2. The Petition contains 3602 words, not including the sections exempted under Fed.R.A.P. 32(f). Certification is based on the word processor used to prepare the Petition.

3. The electronic Petition's text is identical to the text of the paper copies.

4. A virus detection program has been run on the electronic Petition filed in this Court, and no virus has been detected. The virus protection program used is SentinelOne.

# Exhibit A

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_______________

No. 25-2762

_______________

GREGORY HARTMANN; JOHN HAYS; DEWAYNE BAILEY; BRYANT ISHAQ; HOWARD CHAPMAN; CHRISTO BELONY; ROBERT EDWARDS, on behalf of themselves and all others similarly situated,
Appellants

v.

HON. BRIAN E. CHUDZIK; HON. EDWIN TOBIN; HON. MILES BIXLER; HON. ANDREW LEFEVER, in their official capacities as Magisterial District Judges; LANCASTER COUNTY; WARDEN OF THE LANCASTER COUNTY PRISON

_______________

Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. No. 5:22-cv-01588)
District Judge: John M. Gallagher

_______________

Argued June 30, 2026

_______________

Before: SHWARTZ, PHIPPS, and RENDELL, Circuit Judges.

(Filed: July 31, 2026)

---

David Costigan
Steven Oberlander
Stuart T. Steinberg
Dechert
2929 Arch Street
Cira Center
Philadelphia, PA 19102

Sara J. Rose [ARGUED]
Ariel Shappell
Richard T. Ting
Solomon F. Worlds
American Civil Liberties Union of Pennsylvania
P.O. Box 60173
Philadelphia, PA 19104

Counsel for Appellants

Michael Daley
Megan L. Mallek [ARGUED]
Supreme Court of Pennsylvania, Administrative Office of Pennsylvania Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102

David J. MacMain
Stephen G. Rhoads [ARGUED]

MacMain Leinhauser
433 W Market Street, Suite 200
West Chester, PA 19382

Counsel for Appellees

Adeel Bashir
Office of Federal Public Defender
250 N 7th Avenue, Suite 600
Phoenix, AZ 85007

Daniella Gordon
McCarter & English
1600 Market Street, Suite 2900
Philadelphia, PA 19103

Counsel for National Ass'n of Criminal Defense Lawyers Amicus

Kiley M. Vebanac
Office of Attorney General of Pennsylvania, Appellate Litigation Section
1251 Waterfront Place
Pittsburgh, PA 15222

Counsel for Commonwealth of Pennsylvania Amicus

Matthew P. Cavedon
Cato Institute
1000 Massachusetts Avenue NW
Washington, DC 20001

Patrick Maley

K&L Gates
One Newark Center, 10th Floor
Newark, NJ 07102

Nicholas P. Vari
K&L Gates
210 Sixth Avenue
Pittsburgh, PA 15222

Counsel for Cato Institute Amicus

James P. Davy
All Rise Trial & Appellate
P.O. Box 15216
Philadelphia, PA 19125

Counsel for Public Defender Ass'n of Pennsylvania Amicus

Gabriel K. Gillett
Jenner & Block
353 N Clark Street, Suite 4500
Chicago, IL 60654

Counsel for Barry Friedman, Kellen Funk, John Giammetteo, Helen Hershkoff, David Marcus, Judith Resnik, Joanna Schwartz, and Fred O. Smith Amici

---

OPINION

---

SHWARTZ, Circuit Judge.

Plaintiffs were arrested in Lancaster County, Pennsylvania, and detained in the Lancaster County Prison ("LCP") pending trial. They sued Magisterial District Judges Brian Chudzik, Edwin Tobin, Milex Bixler, and Andrew Lefever in their official capacities (the "MDJs"), Lancaster County, and the LCP Warden for violations of their Equal Protection, Due Process, and Sixth Amendment rights, claiming that the MDJs set their bail without considering their ability to pay and without counsel present. The District Court (1) abstained from reviewing their Equal Protection and Due Process claims under Younger v. Harris, 401 U.S. 37 (1971), and (2) dismissed their Sixth Amendment claim. For the following reasons, we will vacate and remand the District Court's order abstaining under Younger and affirm its order dismissing the Sixth Amendment claim.

## I[1]

### A

Pennsylvania Rule of Criminal Procedure 540 entitles arrestees to "preliminary arraignments." At those proceedings, the MDJ must read the charges to the defendant but may not ask questions about them. Pa. R. Crim. P. 540(F). In addition, the MDJ must inform the defendant of his right to counsel but

[1] Because we are reviewing an order entered under Fed. R. Civ. P. 12(b)(6), the factual background is drawn from the well-pleaded allegations in the First Amended Complaint, which are accepted as true. Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).

does not appoint counsel for the preliminary arraignment itself. Id. at 540(F)(1). Finally, the MDJ must determine whether the defendant will be released pending trial, and what, if any, bail conditions to impose.[2] Id. at 540(F)(3).

In setting bail, Pennsylvania Rule of Criminal Procedure 523 requires the MDJ to "consider all available information as that information is relevant to the defendant's appearance or nonappearance at subsequent proceedings, or compliance or noncompliance with the conditions of the bail bond, including information about:"

> (1) the nature of the offense charged and any mitigating or aggravating factors that may bear upon the likelihood of conviction and possible penalty;
> (2) the defendant's employment status and history, and financial condition;
> (3) the nature of the defendant's family relationships;
> (4) the length and nature of the defendant's residence in the community, and any past residences;
> (5) the defendant's age, character, reputation, mental condition, and

[2] Preliminary arraignments are typically held via video, are not officially recorded or transcribed, and last only a few minutes.

> whether addicted to alcohol or drugs;
> (6) if the defendant has previously been released on bail, whether he or she appeared as required and complied with the conditions of the bail bond;
> (7) whether the defendant has any record of flight to avoid arrest or prosecution, or of escape or attempted escape;
> (8) the defendant's prior criminal record;
> (9) any use of false identification; and
> (10) any other factors relevant to whether the defendant will appear as required and comply with the conditions of the bail bond.

Pa. R. Crim. P. 523(A). Lancaster County MDJs typically apply either a "10%" bail condition that requires the defendant to pay at least ten percent of the total bail amount, or a "straight" bail condition that requires the defendant to pay the entire bail amount.

Defendants who cannot post bail remain incarcerated but can challenge the initial bail determination at any time, including during their preliminary hearing, which must be scheduled within fourteen days of the preliminary arraignment. Pa. R. Crim. P. 529(a)-(c), 540(G)(1). Preliminary hearings, however, are often postponed, so defendants who wait until the preliminary hearing to challenge the bail determination

typically remain in custody longer than fourteen days before review occurs.

B

Plaintiffs were arrested at different times in Lancaster County in 2022 and 2023, and all appeared before MDJs for preliminary arraignments without counsel via video from either LCP or a police station. Plaintiffs allege that, during each of these preliminary arraignments, the MDJs imposed cash bail without inquiring into the Rule 523 factors, including financial status. Plaintiffs remained detained pending trial because they could not afford to post the bail that had been set.

Plaintiffs initiated this class action, alleging (1) violations of their right to counsel under the Sixth and Fourteenth Amendments against the MDJ Defendants and Lancaster County and (2) Due Process and Equal Protection violations against the MDJ Defendants and the LCP Warden. Plaintiffs seek to enjoin the LCP Warden from detaining individuals on cash bail unless the MDJs inquire into the Rule 523 factors, including ability to pay. Plaintiffs also seek declaratory relief that Defendants have violated Plaintiffs' rights under the Fourteenth Amendment. Defendants moved to dismiss the claims twice.

The District Court granted Defendants' first motions to dismiss as to Plaintiffs' Sixth Amendment claim, relying primarily on Rothgery v. Gillespie County, 554 U.S. 191 (2008). Based on Rothgery, the Court reasoned "the Sixth Amendment right to counsel attaches at the initiation of criminal proceedings, which in Pennsylvania is the preliminary arraignment," such that Plaintiffs were entitled to counsel at

the first critical stage postattachment proceeding, which, in Pennsylvania, is the preliminary hearing. H.C. v. Chudzik, No. 5:22-cv-01588-JMG, 2023 WL 2745173, at *10 (E.D. Pa. Mar. 31, 2023) ("Chudzik I"). Because the Court held that Plaintiffs were not entitled to counsel at the preliminary arraignments, it dismissed Plaintiffs' Sixth Amendment claim.

After denying Defendants' second motion to dismiss the remaining claims, the District Court sua sponte ordered[3] the parties to brief "[w]hether Younger abstention should apply." H.C. v. Chudzik, No. 5:22-cv-01588-JMG, 2025 WL 2312324, at *3 (E.D. Pa. Aug. 11, 2025) ("Chudzik II"). Following briefing, the District Court abstained under Younger because (1) "the equitable relief that Plaintiffs demand would inevitably lead to federal 'intrusion . . . into the daily conduct of state criminal proceedings,' which contravenes the principles of comity," and (2) Pennsylvania courts are capable of addressing "Plaintiffs' bail challenges, completely obviating the need for a federal court to hear these claims." Id. at *12 (quoting O'Shea v. Littleton, 414 U.S. 488, 502 (1974)).

Plaintiffs appeal.

---

[3] "[A] court may raise Younger abstention sua sponte." Altice USA, Inc. v. N.J. Bd. of Pub. Utils., 26 F.4th 571, 575 n.2 (3d Cir. 2022).

## II[4]

### A[5]

We first address the District Court's abstention under Younger from reviewing Plaintiffs' Equal Protection and Due Process claims. See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007) (explaining that courts must resolve "threshold grounds for denying audience to a case on the merits," such as abstaining under Younger, prior to "reaching the merits" (citation omitted)). Generally, "a federal court's 'obligation' to hear and decide a case is 'virtually unflagging.'" Sprint Commc'ns., Inc. v. Jacobs, 571 U.S. 69, 77 (2013) (quoting Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)). Federal courts should decline to exercise jurisdiction[6] under Younger in deference to ongoing state proceedings "in only a narrow

---

[4] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction under 28 U.S.C. § 1291.

[5] We review orders dismissing actions under Younger de novo. PDX N., Inc. v. Comm'r N.J. Dep't of Lab. & Workforce Dev., 978 F.3d 871, 881 n.11 (3d Cir. 2020).

[6] When a court abstains under Younger, it is acknowledging it has subject matter jurisdiction but deciding specific circumstances support not exercising that jurisdiction. See, e.g., Weekly v. Morrow, 204 F.3d 613, 614–15 (5th Cir. 2000) ("Federal courts do not abstain on *Younger* grounds because they lack jurisdiction; rather, *Younger* abstention 'reflects a court's prudential decision not to exercise jurisdiction which it in fact possesses.'"). Thus, Younger abstention is not a dismissal for lack of jurisdiction.

range of cases." ACRA Turf Club, LLC v. Zanzuccki, 748 F.3d 127, 136 (3d Cir. 2014).

That range includes cases in which a plaintiff seeks to enjoin a state proceeding falling into any of three categories: (1) state criminal prosecutions, (2) state civil enforcement proceedings, or (3) state civil proceedings involving orders in furtherance of the state courts' judicial function. Id. at 138 (citing Sprint, 571 U.S. at 73). If the relief sought involves a request to enjoin a case falling within one of those three categories, then courts consider the so-called Middlesex factors to determine whether to abstain. PDX N., Inc. v. Comm'r N.J. Dep't of Lab. & Workforce Dev., 978 F.3d 871, 883 (3d Cir. 2020). These factors are whether: (1) there are "ongoing judicial proceeding[s]"; (2) those "proceedings implicate important state interests"; and (3) there is "an adequate opportunity in the state proceeding to raise [federal] challenges." Id. (citing Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982)).

Younger abstention is inappropriate here because Plaintiffs do not seek to enjoin "state criminal prosecutions."[7] Sprint, 571 U.S. at 78. Rather, they seek only a declaration that the MDJ Defendants may not detain, and an injunction against the LCP Warden prohibiting him from detaining, individuals on cash bail unless the MDJs inquire into their ability to pay. Because the requested "injunction [is] not directed at the state prosecutions [themselves] . . ., but [rather is directed] only at .

[7] Plaintiffs do not claim the proceedings here involve state civil enforcement proceedings or state civil proceedings involving orders in furtherance of the state courts' judicial function.

. . an issue[, namely bail,] that could not be raised in defense of the criminal prosecution," Younger does not apply. Gerstein v. Pugh, 420 U.S. 103, 108 n.9 (1975) (holding that Younger did not apply to a challenge to "the legality of pretrial detention without a judicial hearing"); see also Stewart v. Abraham, 275 F.3d 220, 225 (3d Cir. 2001) (holding Younger does not bar a Fourth Amendment claim based on a district attorney's re-arrest policy where "[t]he issues . . . raised could not have been raised in defense of [a plaintiff's] criminal prosecution, and the injunction sought would not bar his prosecution"); Conover v. Montemuro, 477 F.2d 1073, 1080 (3d Cir. 1972) (explaining that Younger abstention does not apply to "injunctive or declaratory relief against state officers with respect to violations of federal constitutional rights not amounting to an injunction which will halt or substantially interfere with a pending prosecution" "[e]ven if a state prosecution is pending"). Because Plaintiffs' bail determinations are ancillary to the merits of their criminal prosecutions and do not involve defenses to their alleged crimes, their request that MDJs consider these financial considerations in reaching bail decisions is not a request to enjoin ongoing state criminal prosecutions.[8] Gerstein, 420

[8] For this reason, two of our sister Courts of Appeals agree that Younger does not apply to federal court challenges to state court bail proceedings like the one at issue here. See Arevalo v. Hennessy, 882 F.3d 763, 766 (9th Cir. 2018) ("Younger abstention is not appropriate in this case because the issues raised in the bail appeal are distinct from the underlying criminal prosecution and would not interfere with it. Regardless of how the bail issue is resolved, the prosecution will move forward unimpeded."); Walker v. City of Calhoun,

U.S. at 108 n.9 (explaining that Younger abstention is inappropriate where the injunction sought "could not prejudice the conduct of the trial on the merits").

The District Court erred in reaching the opposite conclusion. It relied on O'Shea for the proposition that Younger "preclude[d] equitable intervention" where "the plaintiffs requested 'an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials'" because "such an injunction 'would disrupt the normal course of proceedings in the state courts via resort to the federal suit for determination of the claim ab initio.'" Chudzik II, 2025 WL 2312324, at *7 (italics omitted) (quoting O'Shea, 414 U.S. at 499-501).[9] O'Shea, however, is distinguishable. The relief

---

901 F.3d 1245, 1255 (11th Cir. 2018) (concluding the district court was not required to abstain where the plaintiff "merely asks for a prompt pretrial determination of a distinct issue, which will not interfere with subsequent prosecution").

[9] The District Court's reliance on Daves v. Dallas County, 64 F.4th 616 (5th Cir. 2023) (en banc) (holding that Younger required abstention from review of state bail procedures), and Wallace v. Kern, 520 F.2d 400 (2d Cir. 1975) (holding Younger required abstention from challenge to incarceration of pretrial detainees unable to make bail), was also misplaced. In Daves, the Court of Appeals for the Fifth Circuit explicitly "disagree[d] with some or all of the reasoning in" our court's ruling in Stewart that "found Younger inapplicable." 64 F.4th at 631. We are obligated to apply our own precedent, including Stewart. Likewise, Wallace held that Younger required abstention from a challenge to the

requested in O'Shea would have enjoined statewide practices applicable to setting bonds, imposing criminal sentences, and collecting fees for jury trials and would have required an "ongoing federal audit of state criminal proceedings" and "continuous supervision by the federal court over . . . conduct" in "future criminal trial proceedings," and thus constituted "unwarranted anticipatory interference in the state criminal process." 414 U.S. at 492, 500-01. Because plaintiffs in O'Shea challenged nearly every stage of state criminal proceedings—from setting bail to sentencing—granting the relief requested would have resulted in "continuous or piecemeal interruptions of the state proceedings." Id. at 500. Plaintiffs here "merely ask[] for a prompt pretrial determination of a distinct issue," namely, inquiry into their financial ability to post bail, "which will not interfere with the

---

incarceration of pretrial detainees unable to make bail, because the "proposition that the principles underlying Younger are applicable only where the federal court is seeking to enjoin a pending state criminal prosecution is not supportable." 520 F.2d at 405. Our precedent contradicts this view, see Stewart, 275 F.3d at 225 (holding that Younger abstention did not apply to plaintiff's Fourth Amendment challenge to prosecutors' "rearrest policy" because "[t]he issues raised could not have been raised in defense of [plaintiff's] criminal prosecution"); Conover, 477 F.2d at 1080 (holding that Younger did not require abstention where requested injunction related to "intake interviews" by probation officers would not "halt or substantially interfere with a pending prosecution"), and thus we do not follow it.

subsequent prosecution[s]" or require ongoing supervision,[10] so O'Shea does not require Younger abstention. Walker v. City of Calhoun, 901 F.3d 1245, 1255 (11th Cir. 2018); see also Arevalo v. Hennessy, 882 F.3d 763, 766 n.2 (9th Cir. 2018) (distinguishing O'Shea on similar grounds).[11]

---

[10] Contrary to the MDJs' statement at oral argument, Plaintiffs' relief asks the District Court to answer the "yes or no question" of whether MDJs must consider the factors in Pennsylvania Rule of Criminal Procedure 523 to make initial bail determinations and does not seek federal oversight of preliminary arraignments to ensure that they are conducted in a subjectively acceptable way. Oral Arg. Tr. 15:07-15:57. Accordingly, Plaintiffs seek relief similar to that sought in Gerstein, 420 U.S. at 108 n.9, which required state courts to make probable cause determinations, and Conover, which required certain procedures for juvenile intake interviews, 477 F.2d at 1080. Neither decision expressed concerns about excessive federal intrusion, and we found no subsequent history to suggest either ruling led to such a result. See, e.g., In re: Florida Rules of Criminal Procedure, 309 So.2d 544 (Fla. 1975) (amending Florida Rules of Criminal Procedure in response to Gerstein).

[11] The District Court also prematurely addressed the Middlesex factors when it assessed whether Plaintiffs had an adequate remedy in state court before determining that Plaintiffs sought to enjoin one of the three types of proceedings to which Younger applies. Malhan v. Sec'y U.S. Dep't of State, 938 F.3d 453, 462 (3d Cir. 2019) ("consider[ing] Middlesex's 'additional factors'" "[o]nly after [it] finds that a proceeding fits" within one of the "three exceptional categories of proceedings," like an "ongoing criminal prosecution.").

Because Plaintiffs do not seek to enjoin ongoing state criminal prosecutions, Younger does not bar review of their claims in federal court.[12]

B[13]

We next review the order dismissing Plaintiffs' Sixth Amendment claim that they are entitled to counsel at their preliminary arraignments. "The Sixth Amendment right of the 'accused' to assistance of counsel in 'all criminal prosecutions' is limited by its terms: 'it does not attach until a prosecution is commenced.'" Rothgery, 554 U.S. at 198 (quoting McNeil v. Wisconsin, 501 U.S. 171, 175 (1991)). "[A] criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction, marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel." Id. at 213. "Once attachment occurs, the accused at least is entitled to the presence of appointed counsel during any 'critical stage' of the postattachment proceedings." Id. at 212. At a "critical stage," "the accused is confronted, just as at trial, by the procedural system, or by his expert adversary, or by both, in a situation where the results of the confrontation might well settle the accused's fate and reduce the trial itself to a mere formality." United States v. Gouveia, 467 U.S. 180, 189

---

[12] Because Plaintiffs do not seek to enjoin ongoing state prosecutions, we need not consider Plaintiff's alternate argument that the Middlesex factors counsel against abstaining under Younger. See Malhan, 938 F.3d at 462.

[13] We exercise plenary review of a district court's order granting a motion to dismiss for failure to state a claim. Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220 (3d Cir. 2011).

(1984) (internal quotation marks and citations omitted). The Supreme Court has cautioned courts to "avoid[] the mistake of merging the attachment question (whether formal judicial proceedings have begun) with the distinct 'critical stage' question (whether counsel must be present at a postattachment proceeding unless the right to assistance is validly waived)" and explained that "counsel must be appointed within a reasonable time after attachment to allow for adequate representation at any critical stage before trial, as well as at trial itself." Rothgery, 554 U.S. at 211-12.

In Pennsylvania, the right to counsel attaches at the preliminary arraignment because that is where a criminal defendant "learns the charge against him" when the MDJ reads the charges, and "his liberty is subject to restriction" when the MDJ makes the initial bail determination. Id. at 213. Defendants are entitled to counsel at critical stages after the preliminary arraignment, but the preliminary arraignment itself is not a critical, postattachment stage for three reasons.

First, the preliminary arraignment is not a postattachment proceeding. Rather, it is the proceeding at which the right to counsel attaches. Second, the facts alleged in the complaint fail to show that a trial-like confrontation occurs at the preliminary arraignment. According to the complaint, no prosecutor attends the preliminary arraignment and Rule 540(F) allows the MDJ only to read the charges but not to ask the defendant about them. Pa. R. Crim. P. 540(F). The MDJ then informs the defendant of his right to counsel and makes an initial bail determination. These events are not trial-like confrontations. See United States v. Portillo, 969 F.3d 144, 161 (5th Cir. 2020) (explaining that criminal defendant's initial appearance, where "the magistrate judge briefly recited

the facts of the indictment, the maximum penalties Portillo faced, and the government's intent to detain him without bond pending trial" was not a "critical stage"); Farrow v. Lipetzky, 637 F. App'x 986, 988 (9th Cir. 2016) (not precedential) (holding that "preliminary bail determination made at the initial appearance [did not] render that hearing a critical stage").[14] Third, although bail determinations may impact criminal defendants' decisions to plead guilty and thus trial outcomes, "pretrial custody" after the preliminary arraignment, alone, "does not present the high probability of substantial harm" necessary to render an initial bail determination a "critical stage," Gerstein, 420 U.S. at 122-23, as the individual can seek review of that decision at any time.

Because the preliminary arraignment is not a postattachment critical stage, Plaintiffs were not entitled to counsel at such proceedings, so the District Court correctly dismissed their Sixth Amendment claim.

III

For the foregoing reasons, we will affirm in part, vacate in part, and remand.

---

[14] Likewise, this case is distinct from Betschart v. Oregon, 103 F.4th 607 (9th Cir. 2024), in which the Court of Appeals for the Ninth Circuit concluded that the district court did not abuse its discretion by concluding that a bail hearing where "witnesses are called, evidence is presented, facts are mitigated, alternatives to incarceration are proposed, and the defendant can address the court," was a "critical stage." Id. at 623.

*Hartmann v. Chudzik*, No. 25-2762
PHIPPS, *Circuit Judge*, dissenting.

The Majority Opinion does not follow the general rule of *Younger* abstention that "a federal court cannot enjoin an ongoing state-court criminal proceeding." *Borowski v. Kean Univ.*, 68 F.4th 844, 849 (3d Cir. 2023) (citing *Younger v. Harris*, 401 U.S. 37, 41, 45 (1971)). By declining to abstain, the Majority allows the possibility of federal-court supervision of state-court bail hearings. That unavoidably conflicts with the Supreme Court's decision in *O'Shea v. Littleton*, 414 U.S. 488 (1974). There, the Supreme Court held that *Younger* abstention is appropriate in response to claims for equitable relief against a "county magistrate and judge" for allegedly "set[ting] bond in criminal cases . . . without regard to the facts of a case or circumstances of an individual defendant." *Id.* at 491–92; *see id.* at 499–502. Here, the plaintiffs challenge a state-court judge's failure to consider certain facts, primarily the ability to pay, when determining bail. In light of that congruence, fidelity to *O'Shea* demands abstention under *Younger*.

The Majority Opinion's only answer to *O'Shea* is a form of judo; it attempts to use the strength of *O'Shea* against itself. According to the Majority Opinion, the reason for abstention in *O'Shea* was that the claims there extended beyond bond hearings to include "nearly every stage of [the] state criminal proceedings." Maj. Op. at 14. But abstention in *O'Shea* was not based on the cumulative weight of the challenges, and therefore its *Younger* abstention holding applied to every claim individually. *See O'Shea*, 414 U.S. at 499–502. So judo does not work here.

Nor is there any other way around *O'Shea*. The authorities principally cited by the Majority Opinion – footnote 9 in *Gerstein v. Pugh*, 420 U.S. 103 (1975), and *Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001) – both involved the

detention of criminal defendants without *any* judicial hearing.[1] In both instances, the courts declined to abstain under *Younger* and ultimately considered the claims for pre-detention judicial hearings. *See Gerstein*, 420 U.S. at 108 n.9; *Stewart*, 275 F.3d at 226. By contrast, the requested relief here is not an order for an otherwise nonexistent hearing; every plaintiff in this case received a bail hearing. This case, therefore, is well outside the ambit of both footnote 9 in *Gerstein* and *Stewart*, which were themselves exceptions to *Younger* abstention.

Finally, the underlying rationale of *O'Shea* applies here with unabated force. The proposed injunction in *O'Shea* "contemplate[d the] interruption of state proceedings to adjudicate assertions of noncompliance by petitioners" that amounted to "nothing less than an ongoing federal audit of state criminal proceedings." *O'Shea*, 414 U.S. at 500. The same holds true here, where the plaintiffs request a federal injunction against the Lancaster County Prison Warden to prevent the enforcement of detention orders issued by Magisterial District Judges unless those judges "comply with the requirements of the Fourteenth Amendment and engage in a constitutionally adequate inquiry into all factors essential to a lawful bail determination, including ability to pay." 1st Am. Class Action Compl. ¶ VII(c) (JA197). As pointed out by the Majority Opinion, Pennsylvania Rule of Criminal Procedure 523 sets forth ten considerations for bail determinations. *See* Pa. R. Crim. P. 523(A)(1)–(10); *see also*

[1] In *Gerstein*, the challenge was to a Florida statute permitting pretrial detention based on solely a prosecutor's information, without a preliminary hearing. *See Gerstein*, 420 U.S. at 859–60. In *Stewart*, the challenge was to a rearrest exception in the Pennsylvania Rules of Criminal Procedure that permitted the Commonwealth to reinstitute charges that had been previously dismissed at a preliminary hearing in front of a judge and to arrest the subject based on those new charges without a "judicial finding of probable cause prior to the rearrest." *Stewart*, 275 F.3d at 224; *see also id.* at 223–24.

Lancaster Cnty. R. Crim. P. 117(III)(B) (granting authority to Magisterial District Judges to set bail). Without *Younger* abstention, a criminal defendant's constitutional claim of inadequate consideration of any of those factors would trigger federal-court review. Apart from the potential volume of challenges that await, that litigation would be inherently burdensome – a criminal defendant would testify against the Magisterial District Judge who set his bail, and to avoid a finding of noncompliance with the injunction, the Magisterial District Judge would likely provide testimony as well. The accused would become the accuser, and the neutral would become the accused. That is much worse than the mere fear of a federal audit that prompted abstention in *O'Shea*. Here, the federal-court intervention would be nothing short of the upending and subsequent micromanagement of a state-court criminal proceeding.

In sum, because *O'Shea* governs, the District Court did not err in abstaining under *Younger*, and I respectfully dissent.

## Certificate of Service

The undersigned counsel hereby certifies that on *September 4, 2026,* she caused the forgoing *Petition* to be served on counsel of record via CM/ECF.

***S/Megan Mallek***
**MEGAN MALLEK, ESQUIRE**
**MICHAEL DALEY, ESQUIRE**
Administrative Office of PA Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102
legaldepartment@pacourts.us
(215) 560-6326, Fax: (215) 560-5486

***Counsel for MDJ Appellees***